# No. 25-50786

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

John Surface; Adan Chavez,

Plaintiffs - Appellants

v.

Pete Pacillas, individually and as Chief of Police of the El Paso Police Department;
City of El Paso,

Defendants - Appellees

---

## On Appeal from
United States District Court for the Western District of Texas

3:24-CV-226

---

## BRIEF OF APPELLANT JOHN SURFACE AND ADAN CHAVEZ

SUBMITTED BY:

S/Raoaa Riad King
RAOAA R. KING
Attorney for Appellants
Texas Bar No. 24122745
King Law Firm, P.L.L.C.
310 N. Mesa Street
El Paso, Texas 79901
Raoaaking@thekinglawfirm.org

# **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| City of El Paso | Evan Reed of City Attorney's Office El Paso, TX |
| City of El Paso | Steven Blanco of Blanco Ordonez Mata & Wechsler, P.C. El Paso, TX |
| City of El Paso | Alejandra Gonzalez of Blanco Ordonez Mata & Wechsler, P.C. El Paso, TX |
| Pete Pacillas | Evan Reed of City Attorney's Office El Paso, TX |
| Pete Pacillas | Steven Blanco of Blanco Ordonez Mata & Wechsler, P.C. El Paso, TX |
| Pete Pacillas | Alejandra Gonzalez of Blanco Ordonez Mata & Wechsler, P.C. El Paso, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Adan Chavez | Brock Benjamin of Benjamin Law Firm El Paso, TX |
| Adan Chavez | Raoaa King of King Law Firm, P.L.L.C. El Paso, TX |
| John Surface | Brock Benjamin of Benjamin Law Firm El Paso, TX |
| John Surface | Gabriel Perez of Law Office of Gabriel S. Perez, P.L.L.C. El Paso, TX |
| John Surface | Raoaa King of King Law Firm, P.L.L.C. El Paso, TX |

S/Raoaa Riad King
Attorney of record for Appellants

iii

## **STATEMENT REGARDING ORAL ARGUMENT**

Counsel for Appellants respectfully requests oral argument. Pursuant to Federal Rule of Appellate Procedure 34(a)(2), oral argument would significantly aid the decisional process of this Honorable Court given the legal and factual complexities of the issues presented.

This is a novel and unique case involving allegations that a law enforcement agency discriminated against, retaliated against, and ultimately arrested employees for engaging in conduct that—to counsel's knowledge—had never previously been the subject of a criminal investigation or arrest by the Department, or, to the best of counsel's information and belief, by any law enforcement agency in the State of Texas. While the underlying conduct itself has occurred before, this case marks the first and only instance in which the Department elected to pursue criminal charges and effectuate arrests based on that conduct.

Counsel believes this unprecedented decision to criminally investigate and prosecute was driven by discriminatory, retaliatory, and political motivations. The combination of these extraordinary circumstances with claims of discrimination, retaliation, selective enforcement, and lack of probable cause raises significant and complex questions regarding the application of federal and state employment discrimination and retaliation principles that would benefit substantially from the opportunity to address the Court directly and respond to any inquiries from the panel.

Oral argument would therefore assist the Court in fully understanding the nuances of the record and the parties' positions.

# TABLE OF CONTENTS

Contents                                                                                Page(s)

**CERTIFICATE OF INTERESTED PERSONS** ........................................................... iii

**STATEMENT REGARDING ORAL ARGUMENT** ...................................................... iv

**TABLE OF CONTENTS** ..................................................................................... vi

**TABLE OF AUTHORITIES** ..................................................................................7

**JURISDICTIONAL STATEMENT** ........................................................................ 10

**STATEMENT OF THE ISSUES** ........................................................................... 11

**STATEMENT OF THE CASE** .............................................................................. 15

      **ARGUMENT** ........................................................................................ **24**

      **I.    SUMMARY JUDGMENT FOR THE DEFENDANT ON PLAINTIFF SURFACE'S TITLE VII WAS ERROR AND THIS COURT SHOULD REVERSE AND RENDER IN SURFACE'S FAVOR ON THAT ISSUE.** ..................................................................................... **24**

      **II.    FACTUAL ISSUES EXISTS AS TO THE PROTECTED ACTIVITY BETWEEN PLAINTIFFS' CHARGE OF DISCRIMINATION AND THE ADVERSE EMPLOYMENT ACTION PRECLUDING SUMMARY JUDGMENT.** ...................................................... 38

      **III.    SUMMARY JUDGMENT FOR THE DEFENDANT ON PLAINTIFFS' §1983 CLAIM WAS ERROR, AND THIS COURT SHOULD REVERSE AND RENDER IN PLAINTIFFS' FAVOR ON THAT ISSUE.** ...................................................... 43

      **A.    Summary Judgment For The City On Plaintiff Surface's §1983 Claim Was Error, And This Court Should Reverse And Render In Surface's Favor On That Issue.** ....................................................................................... 43

      **1.    Plaintiff Surface's Speech Is Protected Citizen Speech on Matters of Public Concern.** ............................................................................ 44

      **2.    Plaintiff Surface Established Causation Based On The Discretionary Acts Of The Defendant.** ........................................................................ 46

      **3.    Plaintiff Surface Alleged Sufficient Objective Evidence To Overcome Probable Cause Under *Neieves* For Retaliatorily Arrest Claim.** ..................... 51

**CONCLUSION** ............................................................................................... 72

Plaintiffs request that the Court of Appeals reverse the District Court's grant of summary judgment on each of the counts of Plaintiffs' Complaint, and remand the case to the District Court for jury trial. ...................................................... 72

**CERTIFICATE OF SERVICE** ............................................................................. 73

**CERTIFICATE OF COMPLIANCE** ...................................................................... 74

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)..................................27, 74

*Alcorn v. Vaksman*,
877 S.W.2d 390 (Tex. App. 1994)............................................................ 62

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)..................................27, 74

*Arlington Pro. Fire Fighters, Int'l Ass'n of Fire Fighters, AFL-CIO, Loc. 1329 v. City of Arlington*,
No. 02-19-00156-CV, 2021 WL 4205012 (Tex. App. Sept. 16, 2021)................ 47

*City of San Antonio v. Hartman*,
201 S.W.3d 667 (Tex. 2006) ................................................................... 50

*Edwards V. Grand Casinos Of Mississippi Inc.*,
145 Fed. Appx. 946 (5th Cir. 2005) ......................................................... 32

*Elkhatib v. Dunkin Donuts, Inc.*,
493 F.3d 827 (7th Cir. 2007) ................................................................. 33

*Franks v. Delaware*,
438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)................................. 62

*Garcetti v. Ceballos*,
547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)...........................47, 48

*Gee v. Principi*,
289 F.3d 342 (5th Cir. 2002) ..............................................................42, 43

*Gonzalez v. Trevino*,
602 U.S. 653, 144 S. Ct. 1663, 219 L. Ed. 2d 332 (2024)..........................Passim

*Gramm v. Fire Dist. 9 DeSoto Par.*,
No. CV 24-1187, 2025 WL 1671958 (W.D. La. June 12, 2025) ....................... 62

*Hall v. Trochessett*,
105 F.4th 335 (5th Cir. 2024)................................................................. 47

*Jones v. Matkin*,
623 F. Supp. 3d 774 (E.D. Tex. 2022)....................................................... 63

*Lee v. Kansas City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) ..............................................................36, 41

*Long v. Eastfield Coll.*,
88 F.3d 300 (5th Cir. 1996) .................................................................. 41

*Malley v. Briggs*,
   475 us 335 (1986)................................................................................ 60, 69
*Mangieri v. Clifton*,
   29 F.3d 1012 (5th Cir. 1994) .............................................................. 60, 69
*Maniccia v. Brown*,
   171 F.3d 1364 (11th Cir. 1999) ............................................................... 32
*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)............................ 67
*Nieves v. Bartlett*,
   587 U.S. 391, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019)............................ 47
*Normore v. Dallas Indep. Sch. Dist.*,
   677 F. Supp. 3d 494 (N.D. Tex. 2023) ..................................................... 50
*Perez v. Texas Dept. Crim. Justice Inst. Div.*,
   395 F.3d 206(5 th Cir. 2004) ..................................................... 27, 30, 31
*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*,
   391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)............................ 49
*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).................... 36, 42
*SMWNPF Holdings, Inc. v. Devore*,
   165 F.3d 360 (5 th Cir. 1999) .......................................................... 27, 28
*Spencer v. Staton*,
   489 F.3d 658 ................................................................................... 60, 69
*Tolan v. Cotton*,
   572 U.S. 650, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)................ 27, 28, 74

Statutes

28 U.S.C. §1291 .................................................................................... 14
28 U.S.C. §§ 1331 and 1343 .................................................................. 14
29 U.S.C. §623(a)(1)............................................................................. 66
42 U.S.C. Section 1981 ......................................................................... 14
42 U.S.C. §1981, and (3) ...................................................................... 19
42 U.S.C. §1983 ............................................................................Passim
42 U.S.C.A. § 2000e–2(a).................................................................... 41
Sections 48.008 and 48.009, Education Code ......................................... 70
Tex. Code Crim. Proc. art. 12.02(a)...................................................... 60
Tex. Penal Code Ann. §39.3................................................................. 69
Texas Penal Code § 39.03 ..............................................................Passim
U.S. Const. Amends. 1, 4 ................................................. 54, 55, 56, 57

Rules

Fed. R. App. P. 32(a)(5) ................................................................. 77
Fed. R. App. P. 32(a)(6) ................................................................. 77
Fed. R. App. P. 32(a)(7)(B) ............................................................ 77
Fed. R. App. P. 32(f) ..................................................................... 77
Fed. Rule Civ. Proc. 56(a) ............................................................. 27
Federal Rule of Appellate Procedure 34(a)(2) ............................... 9

Other Authorities

5 Emp. Coord. Employment Practices §1:37 ........................... 63, 64

# JURISDICTIONAL STATEMENT

Appellants, Plaintiffs below, brought this action under the Title VII of the Civil Rights Act, as amended, 42 U.S.C. Section 1981, First Amendment Rights 42 U.S.C. §1981, and Violation of their Fourth Amendment pursuant to 42 U.S.C. §1983. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. On August 28, 2025, the District Court entered an order granting summary judgment for Appellees, Defendants below. Plaintiffs filed their appeal on September 22, 2025. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in granting summary judgment on Plaintiff Surface's Title VII race-discrimination claim by resolving disputed comparator facts at the summary-judgment stage, disregarding Sergeant Ashley Pagitt's sworn affidavit identifying similarly situated employees outside Surface's protected class who were accused of comparable sexual-harassment conduct but faced no arrest, public identification, or termination, accepting the City's characterization of comparator conduct as "less severe" as a matter of law, and applying an overly rigid comparator standard contrary to Fifth Circuit precedent, including *Perez v. Texas Department of Criminal Justice* and *Lee v. Kansas City Southern Railway Co.*

2. Whether the District Court erred in granting summary judgment on Plaintiffs' Title VII retaliation claims by failing to recognize genuine disputes of material fact as to causation and pretext, where the record reflects close temporal proximity between protected activity (Surface's criticism of department sexual-harassment training and both Plaintiffs' EEOC charges) and materially adverse actions, including unprecedented criminal arrests, an extraordinary press conference publicly identifying Plaintiffs, and terminations purportedly for "being arrested" despite the District Attorney's declination of all charges, expired limitations

periods, departures from ordinary disciplinary practice, and the absence of any similarly treated comparator.

3. Whether the District Court erred in granting summary judgment on Plaintiff Surface's § 1983 First Amendment retaliation claim, including retaliatory arrest, by failing to credit evidence that Surface's training remarks constituted protected citizen speech on matters of public concern, that the speech was a motivating factor and but-for cause of the adverse actions, and that the claim satisfied the *Nieves* exception through objective evidence of differential treatment, including the absence of any comparable Texas Penal Code § 39.03 arrests for workplace sexual-harassment conduct in more than twenty-five years, selective enforcement, the unprecedented press conference, or alternatively by failing to find genuine disputes that no actual or arguable probable cause existed due to material omissions and misrepresentations in the arrest affidavit.

4. Whether the District Court erred in granting summary judgment on Plaintiff Chavez's § 1983 First Amendment retaliatory-association claim by misapplying *Mt. Healthy* and improperly requiring Chavez to prove the adverse actions were based on his own race, rather than on his protected association with Surface, and by failing to recognize genuine disputes whether departmental directives to sever ties with Surface—followed by Chavez's last-minute inclusion as a criminal

suspect to neutralize Surface's potential race-discrimination claim—were a substantial or motivating factor in Chavez's arrest and termination.

5. Whether the District Court erred in granting summary judgment on Plaintiff Chavez's ADEA age-discrimination claim by failing to recognize that Chavez established a prima facie case under *McDonnell Douglas*, including evidence that he was replaced by substantially younger, less experienced employees, and by failing to credit evidence creating genuine disputes that the proffered reasons for termination were pretextual and that age was the but-for cause of the adverse action.

6. Whether the District Court erred in granting summary judgment on Plaintiff Surface's § 1983 Fourth Amendment wrongful-arrest claim by failing to find genuine disputes as to the absence of probable cause, where the arrest affidavit omitted that the alleged conduct was time-barred, failed to disclose exculpatory evidence that complainant Rosa Ibarbo repeatedly requested explicit images from Surface, and omitted material credibility evidence, demonstrating knowing or reckless disregard under *Franks v. Delaware*.

7. Whether the District Court erred in granting summary judgment on Plaintiff Chavez's § 1983 Fourth Amendment wrongful-arrest claim by failing to find genuine disputes as to the absence of probable cause, where Chavez was never

accused by Ibarbo of sexual harassment or Official Oppression, the affidavit mischaracterized complainant-initiated messages, omitted exculpatory and credibility evidence (including statements by Ibarbo's supervisor discrediting Ibarbo), and Chavez was designated a suspect only after months of inaction and days after Pacillas became a finalist for Chief, supporting a *Franks* violation.

## STATEMENT OF THE CASE

Plaintiffs filed their original complaint in the District Court for the Western District of Texas at El Paso on July 02, 2024.[1]

Plaintiffs' complaint identified factual support of their (1) Discrimination and Retaliation Claim under Title VII of the Civil Rights Act of 1964 (2) Violation of their First Amendment rights pursuant to 42 U.S.C. §1981, and (3) Violation of their Fourth Amendment pursuant to 42 U.S.C. §1983.

Plaintiffs filed a supplement to Plaintiffs' original complaint on July 04, 2024.[2]

Defendants filed an answer to Plaintiffs' complaint on August 05, 2024, alleging that Plaintiff's complaint should be dismissed with prejudice and a judgment entered in Defendant's favor.[3]

Defendants filed separate motions for summary judgment on March 04, 2025, for each Plaintiff.[4]

The Oral and Videotaped deposition of Defendant Peter Pacillas was taken on March 11, 2025.[5]

---

[1] ROA.6-34.
[2] ROA.37-51.
[3] ROA.66-75.
[4] ROA.118-139, 374-701
[5] ROA.824-948.

Plaintiffs filed an answer on April 15, 2025, to Defendant's Motion for Summary Judgment.[6]

Defendant filed an answer on April 22, 2025, to Plaintiffs' Response to Defendants' Motion for Summary Judgment.[7]

The District Court entered order granting on motion for summary judgment on August 29, 2025.[8]

Plaintiffs filed notice of appeal timely on September 22, 2025.[9]

---

[6] ROA.707-1616.
[7] ROA.1617-1640.
[8] ROA.1665-1714.
[9] ROA.1715-1717.

## STATEMENT OF FACTS

Plaintiffs John Surface (white, male, heterosexual) and Adan Chavez (Hispanic, male) are highly decorated, long-serving El Paso Police Department officers whose careers ended after retaliatory and discriminatory actions under Interim Chief Peter Pacillas (Hispanic male). These actions culminated in highly publicized criminal arrests days before Pacillas's interview for permanent Chief, followed by terminations after the District Attorney declined all charges.

Surface served nearly 20 years, rising to Lieutenant over the Criminalistics Division. He led the 2019 Walmart Active Shooter investigation—the Department's largest successfully prosecuted case—commanded the first out-of-city deployment after Hurricane Harvey, earned roughly 19 commendations including regional Detective of the Year, and had no prior discipline.

Chavez served nearly 23 years, reaching Sergeant. He joined Narcotics undercover within one year, worked plainclothes street-crime units, was promoted in 2013, and from 2018 handled major-crime scene investigation and evidence collection in Criminalistics. He received numerous commendations and had no relevant prior discipline.

The sequence began after Chief Greg Allen's death in January 2023. Pacillas became Interim Chief amid negative media coverage of his handling of sexual

17

harassment complaints and ordered multiple sexual harassment trainings in a short period, far exceeding the normal annual schedule.

On or about June 8, 2023, during mandatory supervisor training led by Commander Lujan (a close Pacillas confidant), Surface remarked that the frequent trainings seemed designed to solicit complaints rather than benefit the Department. Lujan was offended and, upon information and belief, reported the comment to Pacillas.

On June 12, 2023, a news article criticized Pacillas for failing to address sexual harassment and stated the city needed a chief who does not view the "ideal" officer as a white male heterosexual. That afternoon, the Department opened a sexual harassment investigation against Surface based on nearly two-year-old allegations and immediately transferred him. Chavez was notified as a witness and offered his phone containing potentially exculpatory texts, but investigators declined to review it.

On July 26, 2023, a witness informed the Chief's Office that Surface might have a racial discrimination claim. The next day, Surface was relieved of duty, placed on administrative leave, and subjected to ongoing harassing SWAT surveillance (confirmed by Pacillas in deposition).

On August 25, 2023, Pacillas was named a finalist for permanent Chief. On August 28, Surface was notified he was a criminal suspect and that investigators

were under pressure. On August 29, Chavez received similar notice. That night, without statements from either officer, detectives secured arrest warrants. On August 30, Surface was arrested on two counts of official oppression and Chavez on one count. On August 31, Pacillas held a press conference announcing the arrests—the only such event for any officer arrest despite numerous prior and subsequent arrests (often for more serious offenses) handled quietly (confirmed by Pacillas in deposition). He was later selected permanent Chief.

In February 2024, the El Paso County District Attorney declined all charges. Plaintiffs filed EEOC charges of discrimination and retaliation. Weeks later, they were ordered to Internal Affairs. On July 3, 2024, both were terminated, purportedly for "being arrested," even though the allegations were years old, outside limitations periods, did not meet the elements of official oppression, and were contradicted by intentionally withheld exculpatory evidence showing no sexual harassment occurred.

Plaintiffs identified numerous comparators accused of similar or worse sexual harassment who faced only internal investigations, no criminal charges, and no terminations. Some accused by the same victim were neither investigated nor disciplined; one was promoted soon after. The victim provided a sworn affidavit confirming sexual harassment by other employees who faced no consequences. Defendants identified no other officer treated comparably except the co-Plaintiff.

Evidence showed Chavez was deliberately included to defeat Surface's racial discrimination claim, and Surface was used to defeat Chavez's. Chavez also presented evidence of age discrimination, showing replacement by two younger, less experienced employees.

Plaintiffs filed suit in the Western District of Texas and respectfully request that this Court reverse the District Court's decision and remand for a jury trial on their claims.

## SUMMARY OF THE ARGUMENT

### I. Title VII Race Discrimination (Plaintiff Surface)

The District Court applied an overly rigid comparator standard and improperly resolved disputed facts. Surface presented substantial evidence, including Sergeant Pagitt's affidavit identifying supervisory employees outside his protected class who committed similar conduct. Lieutenant Jason Johnson, accused by the same complainant of comparable sexual harassment, was never investigated, arrested, publicly identified, or terminated. The court credited the City's characterization of the conduct as merely flirtatious and disregarded Pagitt's testimony of additional messages and prior complaints. This evidence creates a triable issue of race-based disparate treatment.

### II. Title VII Retaliation (Both Plaintiffs)

Genuine issues exist regarding causation and pretext. Surface engaged in protected opposition by criticizing repetitive sexual-harassment trainings as complaint-solicitation tools during mandatory training. Chavez engaged in protected activity through continued association with Surface despite directives to sever ties and by filing EEOC charges. Close temporal proximity, unprecedented escalation (criminal arrests for stale allegations, a press conference days before Pacillas's Chief interviews, terminations expressly for being arrested despite DA declination), departures from ordinary practice, and the absence of any similarly treated

comparator raise triable issues of retaliation.

**III. § 1983 First Amendment Retaliation (Plaintiff Surface)**

Surface's criticism during mandatory training constituted protected citizen speech on a matter of public concern. The record shows temporal proximity, antagonism, selective enforcement, and decades of non-enforcement of Texas Penal Code § 39.03 for comparable conduct. Objective evidence of differential treatment satisfies the *Nieves* exception. Alternatively, no actual or arguable probable cause existed due to material omissions and misrepresentations in the warrant affidavit.

**IV. § 1983 First Amendment Retaliatory-Association (Plaintiff Chavez)**

The District Court misapplied *Mt. Healthy* by requiring proof that adverse actions were based on Chavez's own race rather than his protected association with Surface. Evidence of directives to sever ties, followed by Chavez's last-minute inclusion in the criminal case to negate Surface's potential race-discrimination claim, creates a genuine dispute whether association was a substantial or motivating factor.

**V. ADEA Age Discrimination (Plaintiff Chavez)**

Chavez established a prima facie *McDonnell Douglas* case for age discrimination by being over forty, qualified, terminated, and replaced by substantially younger, less experienced sergeants. Replacement evidence and discipline escalation after his EEOC charge create a triable issue whether age was

the but-for cause of termination.

## VI. § 1983 Fourth Amendment Wrongful Arrest (Both Plaintiffs)

No actual or arguable probable cause supported either arrest. Affidavits contain material omissions and misrepresentations, including time-barred allegations and exculpatory evidence of complainant-initiated communications. These omissions render the arrests unconstitutional under *Franks v. Delaware*. For Chavez, the last-minute suspect designation further evidences lack of probable cause and retaliatory motive.

**ARGUMENT**

I.     **SUMMARY JUDGMENT FOR THE DEFENDANT ON PLAINTIFF SURFACE'S TITLE VII WAS ERROR AND THIS COURT SHOULD REVERSE AND RENDER IN SURFACE'S FAVOR ON THAT ISSUE.**

The applicable standard of review where a District Court grants a motion for summary judgment before trial is de novo.[10] The standard of review for evidentiary rulings is an abuse of discretion, but is reversible if the ruling affects a party's substantial rights.[11] The District Court erred in misapplying the proper legal standard of employees who are similarly situated in this case. Contrary to the decision of the District Court, Plaintiff has established a *prima facie* case. Summary judgment is appropriate only if "The movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[12] In making that determination, a Court must view the evidence "in the light most favorable to the opposing party."[13] A "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[14]

In *Tolan v. Cotton*, a dispute arose from a late-night encounter between a

---

[10] *SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360 (5 th Cir. 1999).
[11] *Perez v. Texas Dept. Crim. Justice Inst. Div.*, 395 F.3d 206 (5 th Cir. 2004).
[12] Fed. Rule Civ. Proc. 56(a).
[13] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Tolan v. Cotton*, 572 U.S. 650, 656–57, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014).
[14] *Id.*

police officer and a homeowner outside the homeowner's residence.[15] After a police dispatcher mistakenly identified the vehicle parked at the home as stolen, Officer Cotton approached the scene and confronted the homeowner, who had exited the house with his parents.[16] The officer ordered the homeowner to the ground and, within seconds, shot him, causing serious injuries.[17] The homeowner brought a §1983 excessive-force claim.[18] At summary judgment, the District Court credited the officer's version of disputed facts—including the homeowner's demeanor, the lighting conditions, and the level of perceived threat—and granted qualified immunity.[19] The Fifth Circuit affirmed. The Supreme Court reversed, holding that the lower courts improperly resolved factual disputes and failed to view the evidence in the light most favorable to the nonmovant, emphasizing that courts may not weigh evidence or draw inferences against the party opposing summary judgment.[20]

This case mirrors the summary judgment error identified in *Tolan v. Cotton*. The District Court weighed evidence, resolved factual disputes, and discounted evidence and testimony at the summary judgment stage. First, Sergeant Ashley Pagitt submitted a sworn affidavit stating that she was sexually harassed by Lieutenant Jason Johnson (She refers to him as Commander – his current rank,

---

[15] *Id.* at 651.
[16] *Id.* at 654.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 657, 658.
[20] *Id.* at 559.

however at the time he was a Lieutenant).[21] She provided examples of harassing text messages, and further claimed she exchanged additional text messages with Lieutenant Jason Johnson, beyond those presented, and that she had reported Johnson's sexual harassment on three prior occasions.[22]

The City argued that "Co-Plaintiff Adan Chavez serves as direct evidence that Defendant City's disciplinary practices are applied uniformly across racial groups."[23] But Sergeant Chavez was not similar to Plaintiff Surface in rank or supervisory authority—Chavez was a Sergeant, while Plaintiff Surface was a Lieutenant. By relying on Chavez as a comparator to establish uniform enforcement, the City necessarily conceded that exact identity of rank is not required and that employees subject to the same policies and disciplinary authority may be compared across supervisory levels. The District Court nonetheless rejected Plaintiff's proposed comparators—who, unlike Co-plaintiff Chavez, held supervisory ranks comparable to Plaintiff Surface—by narrowly focusing on its own assessment of conduct severity.[24] The Court held a standard so rigid that the only possible person to qualify was Chavez. Comparator standards cannot be relaxed when they favor the employer Defendant and rigidly tightened when they favor the Plaintiff employee.

---

[21] ROA.744-746.
[22] ROA.747-750.
[23] ROA.378.
[24] ROA.1699-1700.

The error is compounded by the Court's rigid comparator analysis. In a Title VII disparate treatment case that alleges race discrimination but involves separate incidents of misconduct, Plaintiff employee must show that Plaintiff and other employees are similarly situated by showing that employees' circumstances, including their misconduct, was nearly identical.[25] In *Perez*, the Fifth Circuit remanded the case because the District Court issued an instruction that the comparator's misconduct must be of comparable seriousness instead of nearly identical.[26] The Fifth Circuit remanded, finding that "we cannot say that a reasonable jury could not have found Perez, Parma and Clover similarly situated and therefore could not find that TDCJ discriminated against Perez because of his race."[27]

In *Perez,* the Fifth Circuit affirmed summary judgment only after concluding that the Plaintiff failed to present any genuine factual dispute regarding comparator similarity. The Plaintiff, a Hispanic correctional officer, alleged race discrimination under Title VII, but the record showed that the employees he identified as comparators worked under different supervisors, engaged in materially different misconduct, and were disciplined under different circumstances. Those differences were undisputed, leaving no factual question for a jury to resolve.[28] The Court

---

[25] Civil Rights Act of 1964, §703(a), *Perez v. Texas Dep't of Crim. Just., Institutional Div.*, 395 F.3d 206 (5th Cir. 2004).
[26] *Id.*
[27] *Id.* at 215.
[28] *Id.* at 215.

emphasized that comparator similarity is ordinarily a question of fact for the jury, and affirmed summary judgment solely because the evidence foreclosed any reasonable inference of disparate treatment—circumstances not present where, as here, the nature and severity of the comparator conduct and the consistency of enforcement are actively disputed.[29]

The District Court in the present case concluded that Plaintiff Surface cannot establish racial discrimination in violation of Title VII and therefore cannot bring said claim.[30] The District Court in the present case erred for at least two reasons.

First, the Court accepted the City's characterization of the comparator conduct as merely "flirtatious" and deemed it less severe as a matter of law.[31] By resolving disputed questions about the nature of the conduct and the consistency of enforcement, the Court did precisely what *Perez* cautions against—removing from the jury a factual determination that must be decided at trial, rather than crediting that evidence and drawing reasonable inferences in Plaintiff's favor.

Second, In *Perez*, the Fifth Circuit affirmed only because the proposed comparators were undisputedly dissimilar—working under different supervisors, committing materially different violations, and facing distinct disciplinary regimes—such that no reasonable jury could find disparate treatment.

---

[29] *Id.*
[30] ROA.1700.
[31] ROA.1700.

Here, by contrast, Plaintiff presented evidence that other department employees— Jason Johnson, a Black Male Lieutenant, outside the Plaintiff's protected class engaged in comparable sexual harassment toward subordinates and that the Defendant and City of El Paso were aware of that conduct.[32] That evidence included Sergeant Pagitt's affidavit, in which she expressly stated that she exchanged additional text messages with Lieutenant Jason Johnson and that she had reported Johnson's sexual harassment on three prior occasions.[33] Rather than crediting this sworn testimony and drawing reasonable inferences in Plaintiff's favor, the District Court disregarded that evidence, accepted the City's characterization of the limited text messages as merely "flirtatious," and concluded as a matter of law that Johnson's conduct was less severe.

The Fifth Circuit has held that to be a comparator, the Plaintiff and his named comparators must be nearly identical in one or more factors.[34] ("we require that the quantity and quality of the Comparator misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."). Furthermore,

> It is important not to lose sight of the common-sense aspect of this inquiry. It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees—distinctions can always be found in

---

[32] ROA.1699.

[33] ROA.744-746.

[34] *Edwards V. Grand Casinos Of Mississippi Inc.*, 145 Fed. Appx. 946 (5th Cir. 2005), citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

particular job duties or performance histories or the nature of the alleged transactions ... but the fundamental issue remains whether such distinctions are so significant that they render the comparison effectively useless. In other words, the inquiry simply asks whether there are sufficient commonalities on the key variables between the Plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation—recall that the Plaintiff need not prove anything at this stage.

*Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007).

In the context of the instant case, Plaintiff comparators must be Lieutenants with the El Paso Police Department who committed the same or similar offense, i.e., exchanging sexual harassing text messages with their subordinates under disciplinary decisionmakers such as the Chief of Police, and by the same discipline policy. The Plaintiff was a Lieutenant accused of exchanging sexually explicit text messages with his subordinate and the department initiated an investigation based on the allegations, ordered the Plaintiff to be arrested on these allegations, held an unprecedented press conference to publicly humiliate the Plaintiff, and later, after the criminal case was declined and the Plaintiff filed an EEOC complaint, fired the Plaintiff for the act of being arrested.[35][36]

The Plaintiff identified department employees outside his protected class—including Lieutenant Jason Johnson and Lieutenant Gabriel Peralta—who were

---

[35] ROA.751,1141-1142,38-39.
[36] ROA.649.

subject to the same departmental policies governing sexual misconduct, reported through the same chain of command, and were never investigated through the same Internal Affairs process.[37] These employees held the exact supervisory ranks within the same police department, exercised authority over subordinates, and were governed by the same standards of conduct and disciplinary framework as Plaintiff. Lt. Johnson and the Plaintiff were both in charge of specialized units within the department and held the Lieutenant rank for the same time period – as both were promoted on the same day. Both were accused of sending sexually harassing messages to the same complainant Ashley Pagitt –however the Defendant only chose to investigate, arrest, humiliate, and later terminate the Plaintiff– and never took any action against Johnson.[38]

Critically, the department's policies had not changed or were subject to discretionary relaxation. Defendant Pacillas in responding to media scrutiny as to his handling of sexual harassment claims stated on June 12, 2023, that the department maintained a zero-tolerance policy, stating that "there is a zero-tolerance policy, and supervisory personnel must and will act immediately per the law and policy."[39] This public admission confirms that the governing policy applied equally to all supervisory personnel and had not changed. That acknowledgment further

---

[37] ROA.719-720.
[38] ROA.744-746.
[39] ROA.733-734.

supports comparator similarity: Plaintiff and the proposed comparators were subject to the same unchanged policy, enforced by the same leadership, under the same disciplinary mandate.

Plaintiff's comparator evidence did not rest on mere speculation or generalized allegations. Sergeant Ashley Pagitt submitted a sworn affidavit identifying numerous department employees outside Plaintiff's protected class whom she personally reported to Human Resources for sexual harassment or sexually inappropriate conduct.[40] According to Ashley Pagitt, despite her complaints, the department "looked elsewhere" and failed to take meaningful action against those individuals.[41] This affidavit provided specific, firsthand evidence of similarly situated employees governed by the same zero-tolerance policy and disciplinary system who were not arrested, terminated, or publicly humiliated. Yet the District Court did not analyze this affidavit, did not assess the identified individuals as comparators, and did not explain why this sworn evidence failed to create a jury question. Under *Reeves* and *Lee*, the Court's disregarding of probative affidavit testimony—particularly testimony identifying concrete comparators known to the department—constitutes impermissible fact-finding and independently

---

[40] ROA.744-746.
[41] ROA.744-746.

precludes summary judgment.[42] Below is the list of comparable employees identified by Ashley Pagitt and the lack of actions taken against each employee:[43]

| Name | Rank | Race / Ethnicity | Allegation / Conduct | Year of Allegation | Arrest Made | Termination | Department Response / Outcome |
|---|---|---|---|---|---|---|---|
| Roberto Ramos | Commander | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Reginald Moton | Commander | African American | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| David Camacho | Lieutenant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Jason Newport | Lieutenant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| William Pfiel | Lieutenant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Sean Shelton | Lieutenant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Gabriel Peralta | Lieutenant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| John Garcia | Sergeant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Matthew Kennedy | Sergeant | White | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| German Ponce | Sergeant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Michael Vasquez | Sergeant | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Danny Gonzales | Detective | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Fred Arias | Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Angel Arreola | Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Jose Freddy Flores | Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |

---

[42] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009).
[43] ROA.744-746.

33

| Andy Gonzalez | Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
|---|---|---|---|---|---|---|---|
| Joe Lopez | Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Santiago Mejia | Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |
| Danny Borrego | Retired Officer | Hispanic | Sexual harassment | Unknown | No | No | Reported to HR only; no arrest, termination, or discipline comparable in severity to Plaintiff |

This departure from established disciplinary practice permits a reasonable jury to conclude that Defendants' proffered justification is pretextual and that Plaintiffs were subjected to disparate treatment in violation of Title VII.

In addition, Plaintiff Surface proffered a list of comparators that are nearly identical with respect to their job as police officers, rank held, rule violations. and circumstances under the same department wide disciplinary policy where the Chief of Police decides whether to terminate an employee or offer other discipline.[44] Further, the Chief of Police decides whether to arrest an employee or not. The Fifth Circuit has reiterated that if employees to whom Plaintiff seeks to compare himself were similarly situated to the Plaintiff is an issue for the jury. The District Court erred in not permitting these nearly identical facts and circumstances to proceed to a jury determination on the merits.

Plaintiff Surface also provided extensive evidence that El Paso Police Officers

---

[44] ROA.1438.

34

accused or charged as early as 2000, 2017, 2019, and 2023—including for serious felony offenses such as aggravated sexual assault of a child, manslaughter, and criminally negligent homicide—were arrested - yet never terminated.[45] Within the El Paso Police Department, termination occurred only after conviction, as in the Dieguez case, not upon arrest or indictment alone.[46]

Plaintiff Surface, however, was arrested on charges later declined and nevertheless terminated, despite the absence of a conviction and despite materially more serious comparator cases resulting in continued employment.[47] The Plaintiff was told he was being fired for being arrested.[48] The Plaintiff provided a list of around 20 comparable officers, some who were arrested, and some who were not.[49] Some of the examples, such as Lieutenant Ricardo Medina, involved the same allegation – sexual harassment – however was never investigated or arrested.[50] Lieutenant Medina mirrors Plaintiff Surface in that he held the same rank, had multiple complainants; however, he was sustained on a previous sexual harassment allegation, making him a repeat offender.[51] Furthermore, multiple other officers have been arrested; yet never terminated. The District Court ignored this evidence and

---

[45] ROA.1438.
[46] ROA.1438.
[47] ROA.1141-1142.
[48] ROA.15.
[49] ROA.1438.
[50] ROA.1438.
[51] ROA.1438.

ruled all inferences in favor of the Defendant, despite detailed allegations, dates, and even Court issued cause numbers confirming the allegations. Furthermore, Defendant Pacillas in his deposition confirms some of these instances, such as Lt. Medina not being criminally investigated despite multiple complainants, and no discipline and investigation into other incidents, such as Lt. Jason Johnson.[52] Below is the list provided by Plaintiff Surface.

| Officer Name | Rank | Race/ Ethnicity | Allegation/ Charge | Year(s) Allegation Brought | Criminal Disposition/ Status | Discipline/ Termination Outcome |
|---|---|---|---|---|---|---|
| Ricardo Medina | Lieutenant | Hispanic | Sexual harassment (multiple complainants; sustained) | 2023 (sustained); 2024 (second allegation) | No criminal charges | 160-hour suspension; **not terminated** |
| John Chavez *(non-Plaintiff)* | Sergeant | Hispanic | DWI (2); felony theft; sexual harassment | 2023–2024 | DWIs pending; theft arrest | Suspended; **not terminated** |
| Eric Ramirez | Officer | Hispanic | Agg. sexual assault of a child; continuous sex abuse (27 counts) | 2022–2023 | **Felony indictment pending** | **Not terminated** |
| Joshua Gallardo | Officer | Hispanic | Family violence (Class A); DWI | 2024 | Pending (2024C01054) | **Not terminated** |
| Carlos Mendez | Officer | Hispanic | Injury to a child (serious bodily injury) | 2019 | Pending (2019D03032) | **Not terminated** |
| Alan Dieguez | Officer | Hispanic | Intoxication manslaughter | *Pre-2023* | **Convicted (pled guilty)** | **Terminated after conviction** |
| Felipe Barrera | Officer | Hispanic | DWI (Class B) | 2018 | Dismissed | **Not terminated** |
| Jessica Grijalva | Sergeant | Hispanic | DWI | 2020 | Dismissed; expunged (high-profile) | **Not terminated** |
| Ron Martin | Sergeant | Unknown | Misapplication of fiduciary property (SJF) | 2022 | Dismissed 01-09-2024; restitution | **Not terminated** |
| Isaac Menchaca | Officer | Hispanic | Accident w/ damage >$200; negligence | 2023 | Dismissed (PTD) | **Not terminated** |
| Enrique David Mendoza | Officer | Hispanic | Interference w/ public duties (Class B) | 2023 | Dismissed (PTD) | **Not terminated** |
| Aaron Poblano | Officer | Hispanic | Interference w/ public duties (Class B) | 2023 | Dismissed (PTD) | **Not terminated** |
| Anthony Greer | Officer | Hispanic | Agg. assault w/ deadly weapon | 2021 | Declined | **Not terminated** |
| Raymond Licon | Officer | Homicide | Criminally negligent homicide | 2017 | Not guilty; expunged | **Not terminated** |
| Adrian Pina | Officer | Hispanic | DWI (Class A) | 2022 | Dismissed (PTD) | **Not terminated** |
| Mando Kenneth Gomez | Officer | Hispanic | Manslaughter | 2017 | Not guilty | **Not terminated** |
| George DeAngelis | Assistant Chief | Hispanic | Aggravated perjury | 2000 | Dismissed | **Not terminated** |
| Phil Amato | Officer | Hispanic | Sexual assault | *Not stated* | Cleared; expunged | **Not terminated** |
| Rogelio Borges | Sergeant | Hispanic | Family violence | *Not stated* | Dismissed; expunged | **Not terminated** |
| Jerry Armendariz | Officer | Hispanic | Family violence (accused) | *Not stated* | Admin duty; criminal status unclear | **Not terminated** |

[53]

---

[52] ROA.835:3-7.
[53] ROA.1438.

Defendant Pacillas was previously directly in charge of the SWAT team, was a founding member of the SWAT team, and ordered the SWAT team to surveil Plaintiff Surface, despite no allegations ever being made, no documentation ever provided, no charges ever brought or even investigated, and not a single question ever being raised to Plaintiff Surface about any conduct that would constitute being placed under surveillance by the SWAT team.[54] The Defendant Pacillas refers to vague threats being made by Plaintiff Surface, however could produce no details as to any threats.[55] After the initial allegations Defendant Pacillas transferred Plaintiff Surface to the regional command and shift that Ashley Pagitt worked on. The Plaintiff proffered numerous text messages to the Defendant during the Internal Affairs process that showed there were no threats made and that Ashley Pagitt was communicating with him freely, willfully, and playfully – even at one point joking that "he was gay and holding hands with another male supervisor," after his transfer for sexual harassment. The Defendant failed to provide any lawful justification, documentation, or evidence to show why Plaintiff Surface was placed under harassing surveillance by the SWAT team.

At a minimum, these facts create genuine disputes of material fact as to whether Plaintiff Surface was treated less favorably than similarly situated

---

[54] ROA.905-906.
[55] ROA.906-908.

37

employees outside his protected class, requiring that summary judgment be denied.

**II.   FACTUAL ISSUES EXISTS AS TO THE PROTECTED ACTIVITY BETWEEN PLAINTIFFS' CHARGE OF DISCRIMINATION AND THE ADVERSE EMPLOYMENT ACTION PRECLUDING SUMMARY JUDGMENT.**

To establish a First Amendment retaliation claim in the Fifth Circuit under Title VII and §1981, a Plaintiff must show that the Plaintiff engaged in a protected activity, suffered an adverse employer action that would deter a person of ordinary firmness from exercising First Amendment rights, and that the protected speech was a substantial or motivating factor in the employer's decision, unless the employer proves it would have taken the same action absent the protected conduct.[56]

In *Long v. Eastfield Coll.*, Long and Reavis filed complaints against their supervisors, who were aware of the protected activity.[57] Shortly thereafter, the supervisors recommended that both employees be terminated, and the college president, Mr. Aguero, made the final termination decision. Although neither Plaintiff alleged that Aguero personally harbored retaliatory intent, the Fifth Circuit held that causation depends on whether Aguero conducted an independent investigation. If he merely "rubber-stamped" the supervisors' recommendations, the causal link remains intact; if he independently evaluated the facts, the link is broken.

---

[56] Civil Rights Act of 1964, § 703(a), 42 U.S.C.A. § 2000e–2(a); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009).
[57] *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

Because that factual question was unresolved, the Court assumed rubber-stamping at summary judgment and reversed.[58]

> **A.    Plaintiffs' Evidence Was Sufficient To Raise A Material Fact Issue As To Whether The Defendant's Proffered Reason Was A Pretext For Retaliation And, Ultimately That The Defendant's Adverse Employment Action Was Made In Retaliation For Plaintiffs' Having Filed A EEOC Complaint.**

*Reeves v. Sanderson Plumbing Prods., Inc.*, is both factually and legally instructive here. In that case, the Plaintiff prevailed at trial, but the Defendant appealed, contending it was entitled to judgment as a matter of law because the Plaintiff had presented insufficient evidence of pretext to rebut the employer's asserted legitimate reason for termination.[59] The employer initially claimed Reeves was discharged for inaccurate recordkeeping and identified only a single example, but at trial it expanded its justification by introducing evidence of additional alleged infractions. Reeves argued that this shift in explanation, along with other inconsistencies and inadequacies in the employer's proof, supported an inference that the stated reason was not credible. The Fifth Circuit viewed the employer's enhanced trial evidence as "competent trial preparation" rather than dishonesty and reversed the verdict. The Supreme Court, however, reversed the Fifth Circuit,

---

[58] *Price Waterhouse v. Hopki Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).
[59] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

39

holding that evidence undermining the credibility of the employer's proffered explanation constitutes affirmative proof of pretext and permits a factfinder to conclude that the employer was masking an unlawful motive. [60]

The department contends that Chief Pacillas terminated Plaintiff Surface for sexual harassment policy violations, and Plaintiff Chavez for "failure to report" despite telling Surface and Chavez they were being terminated for being arrested.[61] The disciplinary review board however did not sustain Surface on any violation of a sexual harassment policy, and rather used vague terminology, all tied to the act of being arrested. [62] At the same time, Chavez was sustained for sexual harassment, but there was never any evidence proffered by the City that he sexually harassed anyone. The evidence provided against Chavez was clear – there was no sexual harassment and any conversations he had with Complainant Ibarbo, were in fact, initiated and continued by her. The unresolved question, however, is whether the termination decision reflected neutral enforcement of departmental policy or instead served as a vehicle for retaliation following Plaintiffs' protected activity. The department's own collective bargaining agreement imposes a 180–day deadline for resolving such administrative matters, yet Plaintiffs were terminated well after that period had

---

[60] *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002).
[61] ROA.847:12-13.
[62] ROA.550

expired.[63] Defendant Pacillas attempted to proffer an unknown and non-existent contractual clause that allows the Department to investigate "criminal matters" that were tolled, but even using that clause, the Plaintiffs were terminated well after those deadlines.[64]

Plaintiffs Chavez and Surface each engaged in protected activity under Title VII through both opposition and association. Surface engaged in protected activity when he openly criticized the department's handling of sexual harassment training and enforcement, expressing concern that leadership was not meaningfully training supervisors but soliciting complaints after the fact in order to target individuals. Chavez likewise engaged in protected activity when he chose to continue associating with Surface despite clear direction from the department to distance himself. Shortly after being ordered to stop associating with Surface, Chavez was transferred to Crimes Against Persons. Within weeks, Chavez requested a transfer back to Criminalistics, where Surface was assigned. Soon thereafter, Chavez was notified that he had been listed as a witness in a sexual harassment investigation and was later arrested for Official Oppression.

Following these protected activities, the department subjected both Plaintiffs to a series of materially adverse actions. Surface was transferred to another unit

---

[63]ROA.843:21-24.
[64] ROA.844:2-4

within days of his protected speech, relieved of duty, placed on administrative leave for more than a year, and subjected to repeated surveillance—despite the affiant for the arrest warrant being unaware that Surface was under surveillance. The department then escalated the matter by arresting Surface on charges later declined by the District Attorney's Office, publicly identifying him through an unprecedented press conference, and ultimately terminating his employment. Chavez was similarly arrested on baseless charges that failed to meet the elements of Official Oppression and were likewise declined by the District Attorney, publicly humiliated through the same extraordinary press conference, placed on extended administrative leave, and ultimately terminated after filing an E.E.O.C. claim.

This escalation also departed from the department's usual practice. The record reflects that allegations of this nature are typically paper referred and often routed to the District Attorney's office for investigation, rather than pursued internally in a manner culminating in arrest, public spectacle, and termination. Viewed in the light most favorable to Plaintiffs, the close temporal proximity between their protected conduct and the department's investigation, unlawful arrests, humiliation, and escalating discipline supports a reasonable inference of causation. So, the question remains: Why has a police department with over 1,000 sworn officers not proffered any evidence of similarly situated individuals outside of the Plaintiffs? Why has the Defendant failed to identify a single similarly situated officer—throughout its 100+

year existence—whom the Department treated as the "bad cop" and subjected to investigation and arrest for similar conduct? Moreover, after the District Attorney declined prosecution in February 2024, both Surface and Chavez retained counsel and filed EEOC charges alleging discrimination and retaliation—conduct that is independently protected activity. Although the department's investigation had been pending for months without action, within weeks of the EEOC filings the department required both Plaintiffs to appear for further administrative questioning. Each provided extensive evidence disputing the allegations, yet the department terminated them shortly thereafter, purportedly not for sexual harassment, but-for the fact of their arrests. Both Plaintiffs were terminated on July 3, 2024—more than a year after the initial allegations arose and only after they filed EEOC charges. At minimum, this chronology creates a genuine dispute of material fact as to whether Plaintiffs' protected activity affected the adverse actions, precluding summary judgment on their retaliation claims.

III. **SUMMARY JUDGMENT FOR THE DEFENDANT ON PLAINTIFFS' §1983 CLAIM WAS ERROR, AND THIS COURT SHOULD REVERSE AND RENDER IN PLAINTIFFS' FAVOR ON THAT ISSUE.**

   A. **Summary Judgment For The City On Plaintiff Surface's §1983 Claim Was Error, And This Court Should Reverse And Render In Surface's Favor On That Issue.**

To prevail on a section 1983, a movant must allege that the Defendant violated a right secured by the Constitution and laws of the United States, and he must show that a person acting under the color state law committed the alleged violation, 42

43

U.S.C.A Section 1983.[65] The First Amendment forbids retaliation for protected speech, and where a §1983 claim arises from both public-employment discipline and arrest, the Plaintiff must establish a causal connection between the Defendant's retaliatory animus and Plaintiff's subsequent injury specifically, citizen speech on a matter of public concern, materially adverse actions, and that the speech was the motivating and but-for cause of those actions, with the arrest component further requiring either the absence of probable cause or objective evidence satisfying the *Nieves* carve-out.[66] As the District Court expressly acknowledged in its order at page 19, Plaintiff Surface satisfied the adverse-action element; accordingly, that element is not in dispute and is not addressed further in this brief.[67]

> **1.    Plaintiff Surface's Speech Is Protected Citizen Speech on Matters of Public Concern.**

Whether a public employee spoke under official duties is a fact-intensive inquiry and is not resolved merely because the employee was on duty, in uniform, or speaking to a superior.[68] Although the City argued—and the District Court accepted—that Surface spoke "on duty, in uniform, and [in] discussion with his superior," those circumstances are not dispositive.[69] The relevant inquiry is whether

---

[65] *Hall v. Trochessett*, 105 F.4th 335 (5th Cir. 2024).
[66] *Nieves v. Bartlett*, 587 U.S. 391, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019); *Arlington Pro. Fire Fighters, Int'l Ass'n of Fire Fighters, AFL-CIO, Loc. 1329 v. City of Arlington*, No. 02-19-00156-CV, 2021 WL 4205012, at *6 (Tex. App. Sept. 16, 2021).
[67] ROA.1708.
[68] *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).
[69] ROA.1707.

the speech itself fell within the scope of Plaintiff Surface's assigned job responsibilities.

It did not. Plaintiff Surface's statement—criticizing mandatory sexual harassment training as being used to "solicit complaints" rather than to address workplace problems—was not a task he was employed to perform as a Lieutenant. A reasonable jury could conclude that this comment reflected a citizen's viewpoint on departmental governance and the misuse of internal complaint mechanisms, rather than the performance of official duties.

Furthermore, Plaintiff Surface's speech addressed a matter of public concern. Speech concerning the operation of a public safety agency, the purpose and effectiveness of mandatory training, the solicitation of internal complaints, and the use of public resources implicates issues of systemic functioning, accountability, and public trust.[70] Plaintiff Surface expressly challenged the purpose and effect of department wide sexual harassment training, stating that it "seem[ed] like [it was] being done to solicit complaints instead of address any issues."[71] Additionally, the department had been the subject to numerous media articles criticizing the way the department was handling sexual harassment allegations.[72] That criticism went to the integrity and efficacy of departmental policy, not to a personal employment dispute

---

[70] *Id.*
[71] ROA.11.
[72] ROA.732-735.

or private grievance, and the potential for innocent people to be targeted on a baseless sexual harassment allegations due to the nature upon which this training was being conducted. A reasonable jury could therefore find that the speech addressed matters of legitimate public concern.

The *Pickering* balance also favors Plaintiff Surface. The Defendant offered no undisputed evidence that Plaintiff Surface's comment disrupted operations, undermined discipline, or impaired workplace efficiency. At most, the record reflects that a superior was "really upset" by the statement. Mere discomfort or offense by a supervisor is insufficient to outweigh a public employee's interest in speaking on matters of public concern.[73] In the absence of evidence of actual or anticipated. disruption, a reasonable jury could conclude that Surface's interest in speaking outweighed any asserted governmental efficiency interest.

### 2. Plaintiff Surface Established Causation Based On The Discretionary Acts Of The Defendant.

"[A] Plaintiff must establish a 'causal connection' between the government Defendant's 'retaliatory animus' and the Plaintiff's 'subsequent injury.'"[74] Retaliatory animus "must be a 'but-for' cause, meaning that the adverse-action against the Plaintiff would not have been taken absent the retaliatory motive."[75]

---

[73] *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).
[74] *Gonzalez v. Trevino*, 602 U.S. 653, 144 S. Ct. 1663, 219 L. Ed. 2d 332 (2024).
[75] *Nieves*, at 1715.

46

Causation can be established through temporal proximity, evidence of antagonism, departure from regular procedures, shifting explanations, comparator evidence, and statements evidencing retaliatory animus.[76] Plaintiff presented evidence that: (a) Defendants acted shortly after Plaintiff's protected speech; (b) decisionmakers expressed hostility to the content of Plaintiff's speech; and (c) Defendants deviated from ordinary practices to impose harsher measures against Plaintiff.[77] This suffices to raise a triable issue that the protected speech was a substantial or motivating factor.

The District Court demanded direct evidence or improperly weighed competing inferences. But circumstantial evidence and reasonable inferences are sufficient to raise a fact question for the jury under the Fifth Circuit's standards.[78]

The summary judgment record permits a reasonable jury to find that Plaintiff Surface's protected speech was both a motivating factor and the but-for cause of the adverse actions. **Defendants' own evidence** establishes this inference. In support of summary judgment, Defendants submitted Sergeant Ashley Pagitt's initial statement dated July 26, 2023, in which she stated that she was "called in today to IAD to speak about an incident that happened in reference to a possible inappropriate behavior."[79]

---

[76] *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).
[77] *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494 (N.D. Tex. 2023).
[78] *Gonzalez v. Trevino*, 602 U.S. 653, 144 S. Ct. 1663, 219 L. Ed. 2d 332 (2024).
[79] *Id.*

That statement shows Internal Affairs did not respond to a voluntary complaint, but affirmatively initiated contact by ordering Plaintiff Surface's subordinates from the Crime Scene Unit and soliciting information about Plaintiff—conduct from which a jury may infer retaliatory motive. Sergeant Ashley Pagitt did not go to Internal Affairs; Internal Affairs went to her.[80] This distinction matters, if an official takes adverse-action against someone based on the forbidden motive of retaliation for engaging in protected speech, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.[81] The timing further supports causation. Plaintiff Surface engaged in protected speech during sexual harassment training on or about June 7th, 2023, and Internal Affairs initiated subordinate interviews more than a month and a half later, on July 26, 2023. Viewed in the light most favorable to Plaintiff, a jury could conclude that the investigation was prompted by Plaintiff Surface's speech and that, absent that speech, the department would not have launched a solicitation-driven investigation at all, thereby satisfying both the motivating factor and but-for causation requirements.

Further, Defendants cannot invoke the "Would Have Been Taken Anyway" principle because the record establishes that this arrest was unprecedented.

---

[80] ROA.172.
[81] *Nieves* at 1715.

Defendants may attempt to rely on the general proposition that "[i]t may be dishonorable for a public employer to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." [82]

That principle, however, does not assist Defendants here—because the undisputed record forecloses any claim that this enforcement action would have occurred absent retaliatory motive. Why this Plaintiff, and why now?

For more than twenty-five years, Defendants have not arrested, charged, or prosecuted a single individual for sexual harassment under Texas Penal Code § 39.03. Defendants have produced no evidence—none—showing that any similarly situated individual was ever arrested for comparable conduct. To the contrary, Defendant Pacillas affirmatively admits that no one has ever been charged under this subsection for this type of conduct. [83] That concession alone defeats any contention that the arrest here was the product of routine or neutral law enforcement. Where a statute has lain dormant for decades and is suddenly enforced for the first time against a single individual, Defendants cannot plausibly argue that "the action would have been taken anyway." The complete absence of prior enforcement is not merely evidence of bad motive; it is affirmative proof that this action was extraordinary, selective, and

---

[82] *Hartman* at 1696.
[83] ROA.849:6-16

49

discretionary. Courts have repeatedly recognized that selective enforcement—particularly the resurrection of an unused statute—undermines any claim that enforcement was inevitable or policy-driven.

This case also presents precisely the circumstance in which the "would have been taken anyway" defense fails as a matter of logic. If Defendants truly would have arrested Plaintiff regardless of his protected conduct, then Defendants necessarily should be able to point to at least one prior arrest, charge, or investigation under § 39.03 for similar sexual harassment conduct, despite multiple opportunities to do so – both before and after Plaintiff's arrest. They cannot. The City's silence is dispositive. A retaliatory-arrest defendant bears the burden of showing that enforcement would have occurred in the ordinary course. Yet Defendants have offered no evidence of past enforcement, no policy requiring arrest, and no historical practice suggesting inevitability. Instead, the record shows a singular deviation from decades of non-enforcement—coinciding exactly with Defendant's selection as a finalist for Chief of Police.[84] That timing, combined with total historical non-use of the statute, forecloses Defendants' ability to argue inevitability and instead strongly supports the inference that the arrest was prompted by retaliatory animus rather than legitimate law-enforcement objectives.

---

[84] ROA.752

3.      **Plaintiff Surface Alleged Sufficient Objective Evidence To Overcome Probable Cause Under *Neieves* For Retaliatorily Arrest Claim.**

Although probable cause should generally defeat a claim of retaliatory-arrest based on speech protected by the First Amendment, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so; in such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech.[85]

Whether a retaliatory-arrest claim falls within the narrow exception to the probable cause requirement is an objective inquiry.[86] The exception applies when the Plaintiff shows that he was arrested while similarly situated individuals not engaged in protected First Amendment activity were not, or that enforcement otherwise deviated from ordinary practice. Once that showing is made, the claim proceeds as if probable cause were absent.[87]

In *Gonzalez v. Trevino*, Sylvia Gonzalez, a City council member in Castle Hills, Texas, opposed the City manager and helped organize a citizen petition seeking the manager's removal.[88] After the petition was presented at a City council meeting,

---

[85] U.S. Const. Amends. 1, 4. *Nieves* at 1717.
[86] *Id.*
[87] *Id.*
[88] *Trevino* at 653.

City officials alleged that Gonzalez had removed the petition from City files and referred the matter for criminal investigation.[89] Although Gonzalez returned the petition and denied any intent to tamper with records, she was charged with misdemeanor tampering with government documents.[90] The charge was later dismissed, and Gonzalez sued, alleging that City officials caused her arrest in retaliation for her political speech and opposition to City leadership.[91] The Defendants moved to dismiss the complaint. They argued that the presence of probable cause defeated Gonzalez's retaliatory-arrest claims against the individual Defendants.[92] The District Court denied the Defendants' motion.[93] Although Gonzalez conceded that probable cause supported her arrest, the Court allowed her claim to advance after finding that it fell within an exception to the no probable cause rule that was recognized in *Nieves*.[94] The Fifth Circuit reversed that decision on appeal. The Court ruled that a Plaintiff's claim could fall within the *Nieves* exception only if the Plaintiff proffered "comparative evidence" of "otherwise similarly situated individuals who engaged in the same criminal conduct but were not arrested."[95] Gonzalez's claim failed because she did not provide such evidence. The Supreme

---

[89] *Id.* at 1666.
[90] *Id.*
[91] *Id.*
[92] *Id.* at 1667.
[93] *Id.*
[94] *Id.*
[95] *Id.*

Court reversed, clarifying that *Nieves* does not impose an inflexible "same offense, same facts" comparator requirement.[96] The United States Supreme Court addressed the scope of First Amendment retaliatory-arrest claims when probable cause is alleged to exist.[97]

The Court held that a Plaintiff may satisfy the *Nieves* exception by presenting objective evidence of differential treatment, including evidence that the law at issue is rarely enforced, that arrests are uncommon for the alleged offense, or that officials departed from customary practice in the Plaintiff's case.[98] The Court emphasized that courts must consider the practical realities of law enforcement, recognizing that demanding a perfect comparator would improperly insulate retaliatory arrests from judicial review.

In short, *Gonzalez* reaffirmed that probable cause does not categorically bar a First Amendment retaliation claim and that Plaintiffs may rely on broader evidence of selective enforcement—such as deviations from standard procedures or unusual prosecutorial decisions—to establish retaliatory animus.

Even if probable cause existed, that assumption does not defeat Plaintiff Surface's retaliation claim. The existence of probable cause is not dispositive where a Plaintiff presents objective evidence that similarly situated individuals engaged in

---

[96] *Id.*
[97] *Id.*
[98] *Id.* at 1664.

comparable conduct yet did not face the same adverse-action, and where the surrounding circumstances independently support an inference of retaliatory animus.[99] Plaintiff Surface has done both.

In his concurring opinion in *Gonzalez*, the Honorable Justice Alito stated: "The *Nieves* exception is most easily satisfied by strong affirmative evidence that the Defendant **let other** individuals **off the hook** for comparable behavior."[100]

Plaintiff Surface identified similarly situated comparators of the same rank who were accused of misconduct involving the same complainant yet were not terminated. Most notably, Lieutenant Jason Johnson—who held the same rank as Plaintiff Surface and was accused by the same victim for the same conduct—was neither investigated, fired, nor arrested in a comparable manner.[101] The distinguishing factor is not rank, alleged conduct, or the complainant, but protected activity: Plaintiff Surface made a comment during a training that constituted protected speech that upset the Defendants, while Jason Johnson did not.

The Defendant Pacillas's decision to hold a press conference concerning Plaintiff Surface's arrest constitutes additional objective evidence of retaliatory animus. Although similarly situated supervisors accused by the same complainant— most notably Jason Johnson —were not arrested, terminated, or publicly identified,

---

[99] *Id.*
[100] *Id.* at 1668.
[101] ROA.744-746.

Plaintiff Surface and Plaintiff Chavez alone were subjected to a public announcement amplifying the allegations against them. The holding of a press conference was neither routine nor uniformly applied and singled out Surface and Chavez for public condemnation and reputational harm. When viewed alongside the undisputed comparator evidence and the temporal proximity to Plaintiff Surface's protected speech during training, the Chief's public statement supports a reasonable inference that the adverse-action was motivated by retaliation rather than neutral enforcement considerations. At minimum, the selective holding of a press conference creates a genuine dispute of material facts as to retaliatory intent that cannot be resolved at summary judgment.

The fact that no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past, for purposes of the narrow exception under which the existence of probable cause does not defeat a Plaintiff's retaliatory-arrest claim based on speech protected by the First Amendment, if the Plaintiff produces objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.

David Bazan's deposition confirms paper referral is the ordinary practice for these allegations. Detective David Bazan pointed to a time when the victim came

55

forward years later and that case was paper referred to the District Attorney's Office.[102] Bazan testified that sexual harassment, standing alone, "is not a criminal offense" and that Internal Affairs typically handles such matters administratively, with criminal investigation occurring only if the conduct independently satisfies the elements of a penal offense.[103] Bazan further acknowledged that, in his experience, similar allegations are routinely referred through Internal Affairs.[104]

Defendant Pacillas, who has been employed by the Defendant City of El Paso for 40 years, also could not identify a single other person within the El Paso Police Department that had been charged with Official Oppression for a workplace incident.[105] Additionally, Defendant Pacillas admits that he did not locate another incident within the entire State of Texas in which someone was charged under similar circumstances.[106]

This testimony confirms that the handling of Plaintiff Surface's case was a deviation from customary practice. When combined with the undisputed comparator evidence that similarly situated employees accused by the same complainant were not arrested or publicly identified, Bazan's and Pacillas' admissions support a reasonable inference that Surface was singled out for atypical and punitive treatment.

---

[102] ROA.1072.
[103] ROA.1024.
[104] ROA.1026.
[105] ROA.849.
[106] ROA.849.

### 4. Even Assuming That Probable Cause Were Relevant, Notwithstanding The Applicability Of The Nieves Carve-Out, The Undisputed Record Demonstrates That No Probable Cause Existed For Plaintiff Surface's Arrest.

Because no actual or arguable cause existed to arrest Plaintiff Surface, the District Court also erred dismissing Plaintiff Surface's Fourth Amendment wrongful arrest claim. It is clearly established that citizens have the right to be free from arrest without probable cause.[107] Individual Defendant cannot avoid liability for causing Plaintiff Surface's arrest just because a magistrate approved the arrest warrants. That is because there is no qualified immunity if a reasonable officer under the circumstances would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[108]

Affiant officer – Bazan - omitted material facts that established the alleged conduct was both time-barred and legally foreclosed, thereby negating probable cause. The warrant application omitted any date while suggesting conduct within the limitations period, despite the two-year bar for misdemeanor charges under Tex. Code Crim. Proc. art. 12.02(a). In fact, the entirety of the alleged conduct with Ashley Pagitt was outside the statute of limitations.

---

[107] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).
[108] *Malley v. Briggs*, 475 us 335, 345 (1986); see also *Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir. 2007).

Moreover, with respect to Rosa Ibarbo's affidavit, the District Court overlooked evidence produced by the Defendant itself - that Ibarbo herself asked on three separate occasions— for Plaintiff Surface send her a sexually explicit image.[109] This evidence independently defeats probable cause because Tex. Penal Code §39.03 criminalizes only unwelcome requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly. Here, since the recipient affirmatively requested the image multiple times and continually initiates the conversation, the statute therefore does not apply as a matter of law. The Affiant's intentional failure to disclose these exculpatory facts prevented the magistrate from recognizing that the charge was barred by limitations and lacked required statutory elements.

Lastly, the District Court did not properly analyze the fact that Bazan intentionally omitted a statement in which Rosa Ibarbo was called a liar on repeated occasions by her direct supervisor, Bruce Orndorf, a highly respected, 50-year veteran of the El Paso Police Department.[110] Under *Franks v. Delaware*, a warrant is invalid where an affiant knowingly or recklessly omits facts clearly critical to the probable cause determination, rendering Surface's arrest unlawful under the Fourth

---

[109] ROA.532.
[110] ROA.740-742.

Amendment.[111]

On those grounds, the reasonable officer would have known there was no basis to apply for an arrest warrant. The Court should reverse the dismissal of Plaintiff Surface's wrongful arrest claim as it is clear there are genuine disputes of material fact and triable issues upon which only a jury can decide.

**B.    The District Court Erred In Dismissing Chavez's Claim Based On Race-Link Requirement By Misapplying The Governing Standards On Chavez's §1983 First Amendment Retaliatory-Association Claim.**

[A] First Amendment association retaliation claim requires [Gramm] to show: (1) that he suffered an adverse employment action; (2) that his interest in associating outweighed Defendants' interest in efficiency; and (3) that his association with the union was a substantial or motivating favor in the adverse employment action."[112]

A claim for retaliation based on protected association is analyzed under the First Amendment retaliation framework established in *Mt. Healthy City Sch. District Board of Education v. Doyle*, which requires a Plaintiff to show only that he engaged in protected association and that the association was a substantial or motivating factor in the adverse-action, after which the burden shifts to the government to prove it would have taken the same action absent the protected association.[113] The only

---

[111] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).
[112] *Gramm v. Fire Dist. 9 DeSoto Par.,* No. CV 24-1187, 2025 WL 1671958, at *5 (W.D. La. June 12, 2025).

[113] *Alcorn v. Vaksman*, 877 S.W.2d 390, 410 (Tex. App. 1994), writ denied (June 29, 1995).

difference between the requirements for a First Amendment retaliation claim predicated on free speech and one predicated on free association is that the latter is not subject to the threshold public concern requirement.[114]

The First Circuit has held that the *Mt. Healthy* causation inquiry applicable to a public employee's First Amendment/free speech retaliation claim also applies in instances where a government employee claims that his employer has taken adverse-action that is violative of his associational rights; thus, where the Plaintiff satisfies the burden of showing that his conduct was constitutionally protected and affected the employer's decision for the adverse employment action, the Court must determine whether the employer has shown by a preponderance of the evidence that it would have reached the same decision even in the absence of protected conduct.[115] Rather than applying this standard, the District Court required Chavez to prove that the adverse actions taken against him were "based on [his] own race," effectively importing an Equal Protection–style intent requirement that has no place in First Amendment retaliation doctrine. [116]

The employer must show a legitimate, nondiscriminatory reason for its actions; and if the employer demonstrates a legitimate, nondiscriminatory reason for

---

[114] *Jones v. Matkin*, 623 F. Supp. 3d 774 (E.D. Tex. 2022).

[115] §1:37. Section 1983 First Amendment claims; right to association, 5 Emp. Coord. Employment Practices §1:37.

[116] ROA.1684

the adverse employment action, the burden shifts back to the employee to show that the employer's actions were a pretext for illegal retaliation.[117]

Chavez testified he was told to end his association with Surface and believed the department targeted the relationship because it had "some problem with [Plaintiff] Surface."[118] This evidence supports that association was a motivating factor. At minimum, it creates a triable dispute.

Departmental leadership advised Chavez to "cut off ties" with Surface because the department "wanted [him] to get away from [Plaintiff] Surface."[119] Chavez thereafter faced arrest, placement on administrative leave for over a year, and later termination. Association with a colleague—particularly where the government directs a person to sever ties—implicates protected associational interests. A jury could find Chavez maintained the association and was penalized for it. That rationale does not pertain to Equal Protection or statutory associational discrimination doctrines, but the First Amendment's protection against retaliation for association. The First Amendment prohibits government action taken to penalize association regardless of the race-based nature of the association.

The Defendant asserted that Chavez was terminated because he had been

---

[117] §1:37. Section 1983 First Amendment claims; right to association, 5 Emp. Coord. Employment Practices § 1:37.
[118] ROA.12.
[119] ROA.12.

arrested for Official Oppression.[120] But the arrest itself was predicated on an affidavit that failed to establish probable cause, although a magistrate judge signed the warrant. The Defendant also avoids addressing evidence that Chavez's arrest served a secondary purpose: creating the appearance of neutrality by arresting a Hispanic officer alongside his white Co-Plaintiff, Surface, in order to deflect scrutiny from the selective targeting of Surface alone, especially when other independent witnesses had proffered to the Defendant that Defendants were racially discriminating against Surface.[121] More so, the Defendants fail to address the reason Chavez was never initially transferred as Surface was, never relieved of duty as Surface was, nor informed that he was an offender.[122] It appears in the end that Chavez was ordered to be arrested at the last minute – which would support the allegations he was arrested to nullify a racial discrimination claim Surface might file. This information is supported by evidence and a detailed timeline provided by Plaintiffs Chavez and Surface.[123] There was no new information developed from complainant Rosa Ibarbo – as this information all occurred during the days after June 12, 2023. The arrest only occurred after Defendant Pacillas was notified that he was a finalist for Chief of Police – occurring over two months after the initial

---

[120] ROA.15.
[121] ROA.12-13.
[122] ROA.918-919.
[123] ROA.1178.

allegations.[124] This context underscores that the proffered justification for Chavez's termination cannot be accepted at face value and, at minimum, presents a genuine dispute of material fact regarding motive and causation. By imposing on Chavez the burden to disprove alternative motivations and to establish race-based animus, the Court inverted the *Mt. Healthy* framework, relieved the City of its affirmative defense, and resolved disputed issues of motive and causation against the non-movant at summary judgment. The Court credited Defendants' rationale and imposed an inapposite race-based requirement, rather than applying the First Amendment associational analysis and drawing all reasonable inferences for Chavez. Given the record about directives to "cut off ties" and the contested motives for subsequent adverse actions, this was error.

Because misallocation of the burden and application of an incorrect legal standard are errors of law reviewed de novo, reversal is required.

### C.    Substantial Evidence Allows A Reasonable Jury To Find That Age Discrimination Drove Plaintiff Chavez's Termination.

Under the ADEA, an employer may not discharge or otherwise discriminate against an individual "because of such individual's age."[125] Courts apply the *McDonnell Douglas* burden-shifting framework. To make a prima facie case, Plaintiff must show: (1) he was at least 40; (2) he was qualified for his position; (3)

---

[124] ROA.1206-1209.
[125] 29 U.S.C. §623(a)(1).

he suffered an adverse employment action; and (4) he was replaced by a substantially younger person or otherwise treated less favorably than similarly situated, substantially younger employees.[126] If established, the employer must produce a legitimate, nondiscriminatory reason, and Plaintiff must then prove pretext and that age was the but-for cause of the adverse-action.

Plaintiff easily satisfies the minimal prima facie burden required under *McDonnell Douglas*. Plaintiff was over forty years old at the time of his termination, placing him squarely within the class protected by the ADEA. [127] He was objectively qualified for his position, having served as a Sergeant since 2013 and having been assigned to the Crime Scene Unit since 2018 at the time of his termination—an assignment reflecting experience, competence, and trust by the department. Plaintiff suffered an adverse employment action when he was terminated effective July 3, 2024. Finally, Plaintiff presented evidence that he was replaced by substantially younger employees, including Sergeant Claudia Alcantar and Sergeant Peter Fonte. [128] Taken together, these facts are more than enough to satisfy the minimal prima facie threshold and shift the burden to the employer to articulate a legitimate, nondiscriminatory reason for the termination.

Defendant has pointed to alleged workplace misconduct and policy violations

---

[126] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).
[127] ROA.61.
[128] ROA.1174.

culminating in termination. Plaintiff's burden at this stage is to produce evidence allowing a reasonable jury to find those reasons are pretextual and that age was the but-for cause.

A reasonable jury could find that the department's proffered justification was pretextual based on (1) comparator and replacement evidence that Plaintiff's position was filled by substantially younger sergeants with materially less supervisory experience; (2) inconsistencies in the department's asserted bases for termination, where the underlying criminal charge of Official Oppression was formally declined by the District Attorney on February 1, 2024, yet Plaintiff was nonetheless terminated following the administrative process; and (3) the temporal sequence and escalation of discipline, including the sustaining of Internal Affairs allegations, the Disciplinary Review Board's approval, and the department's June 18, 2024 termination decision months after criminal prosecution had been declined, and only occurring after the Plaintiff Chavez filed an EEOC charge of discrimination and retaliation.[129]

A reasonable juror may find that Defendant's rationale is unworthy of credence where younger, less experienced replacements were chosen over Plaintiff and termination proceeded despite the declination of criminal charges, especially given Plaintiff's decades-long tenure and supervisory experience. The combination

---

[129] ROA.45-47.

of replacement by substantially younger individuals and the sequence of events after prosecutorial declination permits a finding that, but-for Plaintiff's age, Defendant would not have decided to terminate him in favor of younger sergeants.

### D. The Court Erred In Denying Plaintiff Chavez's 1983 Claim Of Wrongful Arrest Based On Probable Cause.

### 1. The Defendant Intentionally Misrepresented And Omitted Evidence From The Arrest Affidavit.

Because no actual or arguable probable cause existed to arrest Plaintiff Chavez, the District Court also erred dismissing Plaintiff Chavez's Fourth Amendment wrongful arrest claim. It is clearly established that citizens have the right to be free from arrest without probable cause.[130]

Individual Defendant cannot avoid liability for causing Plaintiff Chavez's arrest just because a magistrate approved the arrest warrants. That is because there is no qualified immunity if a reasonable officer under the circumstances would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. [131]

Plaintiff Chavez was arrested for Official Oppression. Under Tex. Penal Code Ann. §39.3, the relevant elements of Official Oppression are as follows: [132]

a) A public servant acting under color of his office or employment

---

[130] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).
[131] *Malley v. Briggs*, 475 us 335, 345 (1986); see also *Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir. 2007).
[132] Tex. Penal Code Ann. §39.03 (West).

66

commits an offense if he:

(3) intentionally subjects another to sexual harassment.

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

(c) In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.

(d) An offense under this section is a Class A misdemeanor, except that an offense is a felony of the third degree if the public servant acted with the intent to impair the accuracy of data reported to the Texas Education Agency through the Public Education Information Management System (PEIMS) described by Sections 48.008 and 48.009, Education Code, under a law requiring that reporting.

For purposes of Chavez's arrest, we are focused on (a)(3), which states "intentionally subjects another to sexual harassment". Plaintiff Chavez is not accused of subjecting Rose Ibarbo to sexual harassment, nor is there any evidence provided that Chavez subjected Rose Ibarbo to sexual harassment.

Contrary to that, Defendant Pacillas stated in his deposition "He was aware of the sexual harassment that Officer Ibarbo filed. She made an outcry, and he didn't do anything to stop it". [133] There was no evidence presented that Officer Ibarbo made an outcry that Lt. Surface was sexually harassing her. To the contrary, the evidence presented by the Defendant stated from Ibarbo "Our boy was happy when he left.

---

[133] ROA.861-862.

No. Blue teams Lol", to which Sgt. Chavez replied "Lol, you made him happy?" and Ibarbo replies "Made him laugh, my morals are safe!". The conversation continues between the two, however there is never any mention of Lt. Surface sexually harassing Rosa Ibarbo.

More importantly, the Defendant fails to mention that Sgt. Chavez was never accused by Officer Ibarbo of sexual harassment. It is customary that if someone is accused of sexual harassment, they and the alleged victim are separated until the duration of the investigation, which did not occur because Sgt. Chavez was not a suspect, but a witness. The evidence provided by Ibarbo, which consisted of just a few text messages were conversations that she initiated and text messages taken out of context. [134]

Lastly, the District Court did not properly analyze the fact that Detective Bazan – the Affiant - intentionally omitted a statement in which Rose Ibarbo was called a liar on repeated occasions by her direct supervisor, Bruce Orndorf, a highly respected, 50-year veteran of the El Paso Police Department.[135] Under *Franks*, a warrant is invalid where an affiant knowingly or recklessly omits facts clearly critical to the probable cause determination, rendering Chavez's arrest unlawful under the Fourth Amendment.[136] When combined with the misrepresentations of text

---

[134] ROA.243-244.
[135] ROA.741.
[136] *Franks* at 155.

messages from Ibarbo, these intentional omissions should be an issue for the jury to decide – not for the court to decide at the summary judgment stage.

2. **The Defendant Made A Last-Minute Decision To Label Chavez A Suspect And Arrest Him To Negate Racial Discrimination Claims Made By Co-plaintiff Surface**

The Defendant was in possession of the facts concerning Ibarbo on June 12, 2023. Nothing was done in the investigation until two things occurred. On approximately July 27, 2023, an unrelated party, Lt. Peralta, spoke to the Chief's office on Plaintiff Surface's behalf and informed the Chief's office that Surface potentially had a racial discrimination claim against the City. [137] The very next day, Co-plaintiff Surface was relieved of duty and placed on administrative leave.[138] (Of note, Surface was out of town and notified by phone he was relieved of duty – he formally signed the document upon his return to El Paso on July 31, 2023). Chavez remained on duty, fully employed, and still working in the Crime Scene Unit.

On Friday, August 25, 2023, Interim Chief Pacillas was notified that he was a finalist for the Chief of Police Job and that interviews would occur in two weeks.[139] The weekend proceeds, and on Monday, August 28, 2023, Co-plaintiff Surface was notified that he was a suspect in a criminal investigation and that he was requested to provide a statement. On Tuesday, August 29, 2023, Surface is notified that the

---

[137] ROA.12.
[138] ROA.463.
[139] ROA.1205-1209.

investigators are being pressured by the Chief's office to wrap it up. Surface's attorney advises the investigators that he will coordinate with Surface to provide a statement. That afternoon, around 6:00 pm, investigators reach out to Plaintiff Chavez and tell him that he is a suspect and requested a statement. Chavez tells the investigator that he needs to speak to an attorney and will call them back since it is after regular business hours. Although the Defendant had no new information and the allegations were at this point months old, and in the case of Surface, years old – the Department rushed through the process of obtaining a criminal arrest warrant after hours.[140]

That night, while working several hours of overtime, Detectives obtain a warrant of arrest for Chavez. Chavez is arrested on August 30, 2023, and relieved of duty, and on August 31, 2023, Pacillas holds the unprecedented press conference announcing the arrests.[141] Soon after this press conference, Pacillas interviews and is selected for Chief.

This detailed timeline and evidence, supported by news articles confirming the timing of the arrests, combined with the lack of probable cause for the arrest warrant, supports the inference that Plaintiff Chavez was added as a last-minute decision to negate potential racial discrimination claims. Defendant Pacillas

---

[140] ROA.1178.
[141] ROA.1178.

confirms in his deposition that Plaintiff Chavez was not transferred and not relieved of duty until the day after the arrest occurred – in contrast to the treatment of Co-plaintiff Surface.[142]

The District Court ignored this evidence and did not evaluate these claims when determining that probable cause was justified. In making that determination, a court must view the evidence "in the light most favorable to the opposing party." [143] When viewing the evidence in the light most favorable to Plaintiff Chavez, it is clear there is a genuine dispute of material fact – "Was Plaintiff Chavez ordered to be arrested at the last minute to negate a potential racial discrimination claim by Co-Plaintiff Surface?". "Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[144] The evidence provided by Plaintiff Chavez is definitive and provides a plausible explanation for the last-minute arrest of Chavez upon which a reasonable jury could return a verdict upon.

The District Court erred in ignoring this evidence and making all inferences and viewing the evidence in the light most favorable to the Defendants.

---

[142] ROA.845.
[143] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also *Anderson v. Lobby*, supra, at 255, 106 S.Ct. 2505. *Tolan v. Cotton*, 572 U.S. 650, 656–57,
[144] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## CONCLUSION

Plaintiffs request that the Court of Appeals reverse the District Court's grant of summary judgment on each of the counts of Plaintiffs' Complaint, and remand the case to the District Court for jury trial.

Signed on this the 6th day of February, 2026.

Respectfully Submitted,

By:  S/Raoaa Riad King
RAOAA R. KING
Attorney for Appellants
Texas Bar No. 24122745
King Law Firm, P.L.L.C.
310 N. Mesa Street
El Paso, Texas 79901
(915) 249-6099
Raoaaking@thekinglawfirm.org

# CERTIFICATE OF SERVICE

I certify that on February 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which automatically provided notice to the following CM/ECF participants:

**Steven J. Blanco**
State Bar No. 00796217
Blanco Ordoñez Mata & Wechsler, P.C.
5715 Cromo Drive
El Paso, Texas 79912
Telephone: (915) 845-5800
Facsimile: (915) 845-5555
*sblanco@bomwlaw.com*

**Alejandra Rodriguez Gonzalez**
*State Bar No. 24123971*
Blanco Ordoñez Mata & Wechsler, P.C.
5715 Cromo Drive
El Paso, Texas 79912
Telephone: (915) 845-5800
Facsimile: (915) 845-5555
*arodriguez@bomwlaw.com*

**Mr. Evan Daine Reed**
*State Bar No. 24093018*
El Paso City Attorney's Office
300 N Campbell St
El Paso, Texas 79901
Telephone: (915) 212-0033
*reeded@elpasotexas.gov*

*Attorneys for Appellees*

S/Raoaa Riad King
RAOAA R. KING

73

# **CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements.

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 12986 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 docx, in 14-point Times New Roman for body and 12-point Times New Roman for footnotes.

S/Raoaa Riad King
RAOAA R. KING